UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   **(IN CHAMBERS) ORDER RE MOTION TO STRIKE COMPLAINT (DKT. 16)**

I.   **Introduction**

On May 4, 2016, John Deyong Hu ("Hu") and Hu & Associates, LLC (collectively, "Plaintiffs") brought this action against New Life Senior Wellness Center, LLC, New Life of Elkhorn, LP, New Life of Crivitz, LP, and Zoe Makhsous (collectively, "Defendants"). They advance the following claims: (i) libel; (ii) libel per se; (iii) trade libel; (iv) false light; (v) negligent interference with prospective economic relations; (vi) intentional interference with prospective economic relations; and (vii) respondeat superior. Complaint, Dkt. 1. Plaintiffs' claims arise out of a series of postings in online forums that Makhsous made between 2012 and 2016. *Id.* ¶ 29.

On July 26, 2016, Defendants filed a Special Motion to Strike the Complaint under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16(b) ("Motion"). Dkt. 16. Plaintiffs opposed ("Opposition", Dkt. 21) and Defendants replied (Dkt. 23). A hearing was held on the Motion on December 5, 2016. Dkt. 30. At the hearing, Plaintiffs were directed to file a supplemental brief that addressed whether the commercial speech exemption to the anti-SLAPP statute applied to their claims. *Id.* They were also directed to address what limited discovery, if any, might be necessary to address that issue. *Id.* Defendants were given the opportunity to respond. *Id.*

On January 5, 2017, the Court ordered limited discovery "to address whether Plaintiffs and Defendants are competitors and, if so, whether the commercial speech exception to the anti-SLAPP statute applies." Dkt. 36 at 1. The cut-off date for this limited discovery was extended twice. Dkts. 66, 77. Plaintiffs filed a supplemental brief addressing the additional discovery on April 20, 2017. Dkt. 76. Defendants filed a supplemental brief addressing the additional discovery on May 15, 2017. Dkt. 79. At that time the matter was deemed submitted.

For the reasons stated in this Order, the Motion is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

## II.   Background

### A.   Allegations in Complaint

Hu is member of the California Bar. His practice focuses on immigration matters, and he specializes on visa petitions under the EB-5 Immigrant Investor Program. Complaint ¶ 4. The EB-5 program makes visas available to foreign investors who invest in commercial enterprises in the United States under certain conditions. *Id.* ¶ 10. To qualify for the program, an investor must spent at least $1 million -- or $500,000 if the investment is in a rural area or area of high unemployment -- and create at least ten full-time jobs for American workers. *Id.* ¶ 14.

The Complaint alleges that most investment projects involved in the EB-5 program charge investors a standard administrative fee of $40,000-$80,000 in addition to the amount of the investment. *Id.* ¶ 22. It also alleges that this additional fee is often "kick[ed] back" to the agents that introduced the investors to that project. *Id.* The Complaint states that Hu does not accept such kickbacks. *Id.* at ¶ 23. As a result, he has a favorable reputation within this practice area. *Id.* ¶ 24. Hu is the exclusive promoter for the investment project Americana Hesperia Retirement Project, LLC ("Hesperia"). *Id.*

The Complaint alleges that between 2012 and 2016, Defendant Makhsous, acting individually and on behalf of the remaining Defendants, "has repeatedly published malicious and false defamatory statements about Plaintiffs on various prominent Chinese blogs." *Id.* ¶ 29. Specifically, the Complaint alleges that, on November 9, 2012, a potential EB-5 investor appeared on Chinese blog http://yiminjiayuan.com and inquired about Plaintiffs. *Id.* ¶ 30(A). In response, Makhsous, under the username "EB-5 Black Horse," posted an article written by Plaintiff and added the following comment: "After reading the learning notes of Lawyer HU, I cannot help but wonder which economist taught him? Isn't it harming the young generation?" *Id.* It is alleged that immediately thereafter, Makhsous posted details about a different investment project, and commented that, "[i]f the explanation from the project party is reliable, this project is quite good." *Id.*

The Complaint also alleges that, on November 19, 2012, Makhsous, again under the username "EB-5 Black Horse," joined a thread on an unspecified website about Hu's practices. *Id.* ¶ 30(B). He allegedly stated, "as an attorney exclusively promoting a project, even if he does not receive kickbacks, there is a conflict of interest." *Id.*

Finally, the Complaint alleges that on March 31, 2016, a potential investor asked a question about Hu's Hesperia project on yiminjiayuan.com. *Id.* ¶ 32. The Complaint alleges that Makhsous responded with the following comment: "this investment project is already being sued by SEC, don't you know?" *Id.* When another investor responded with a follow-up question, the Complaint alleges that Makhsous posted a link to an unrelated SEC filing. *Id.* ¶ 34. Later, Makhsous allegedly copy-pasted a blog post into the thread on yiminjiayuan.com that was written by the Center for Immigration Studies and titled "If the EB-5 Developer Can't Count the Zeroes, Look for Another Broker." It described a developer who ran an uncorrected investment proposal for weeks on the Internet that confused $1.575 billion with $157.5 million. *Id.* ¶ 35. The Complaint alleges that Makhsous bolded the statement at the bottom of blog post linking the erroneous investment proposal to "John Hu Migration Consulting." *Id.* ¶ 36. John Hu Migration Consulting has no relationship to Plaintiffs. *Id.* ¶ 37.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

According to a translation of this thread submitted by Defendants, their comments in the thread were as follows:

| | |
|---|---|
| [User1]: | The website wwchinese.com thinks highly of Mr. Hu and his projects, so I'm wondering whether should I make the investment or not. |
| [Makhsous]: | The SEC has already prosecuted this project, you have no idea? |
| [User2]: | Why? |
| [Makhsous]: | . . . <br> You can check out on the website of SEC. |
| [User3]: | @[Makhsous] <br> I'm one of the investors of this project, you are obviously defaming it right here. |
| [User4]: | . . . <br> Really? I'm also investing in this project. And Mr. Hu is very famous both in Los Angeles and New York, how come his project was prosecuted? I'm in the USA right now, how to find out what's going on about the prosecution? <br> . . . |
| [User5]: | The nursing home project isn't profitable, and the bed fee is very expensive, and you are not sure whether the senior people will live in it or not. I bet they must have told you the vacancy rate is very low. But in my opinion, you can think about L.A. Figueroa Central project or apartment project. You can make the investment immediately after they are completed. <br> . . . |
| [Makhsous]: | [Posts article titled "Pair misspent millions from Chinese investors in EB-5 visa program, SEC says"] <br> . . . <br> Actually, there is a nursing home of EB-5 program in Hespeia [sic] that has been prosecuted by SEC, but I'm not sure whether it's the one you invested or not. |
| [Makhsous]: | . . . <br> The following link is about Mr. Hu's lawsuit, and it's kind of interesting. <br> http://uschinatradewar.com/files . . . L-COMPLAINT-EB5.pdf |
| [User1]: | I also saw the first lawsuit, and I will confirm with Mr. Hu. Where can I check the lastest [sic] status regarding this kind of lawsuit? The second one is a false accusation. The plaintiff has already withdrew [sic] the lawsuit. |
| [Makhsous]: | [Posts article titled "Default Issued Against Law Firm in Immigrant Investor Suit"] <br> . . . <br> Is this the project you invested in? It seemed that Mr. Hu lost the lawsuit directly. |
| [Makhsous]: | . . . <br> The Indictment of SEC is right here. <br> https://www.sec.gov/litigation/complaints/2015/comp23414.pdf |
| [Makhsous]: | [Posts article titled "Yet Another Chinese Alien Sues Yet Another Chinese American in EB-5 Case"] <br> The result of Mr. Hu's lawsuit. |
| [Makhsous]: | [Posts article titled "If the EB-5 Developer Can't Count the Zeroes, Look for Another Broker"] <br> Another funny thing, check out who is promoting this project. <br> http://cis.org/north/if-eb-5-dev ... look-another-broker |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

| [Mahksous]: | This is the post from wwchinese, the Internet mercenaries hired by Mr. Hu are actually taking a fast move. And they also conected [sic] the prosecution case of investors and the case of SEC, which is quite intriguing. I'm still thinking that the municipal government of Hesperia has approved two nursing home projects. |
|---|---|
| [User3]: | . . .<br>You are defaming Mr. Hu, fortunately I know the turth [sic]. The lastest [sic] court verdict ruled that Zhang Shoumin be punished serverly [sic] for cheating the court. |
| [User3]: | . . .<br>Facts speak louder than words |
| [Makhsous]: | I only pay attention to Engish [sic] reports other than Chinese posts, for example:<br>Yet Another Chinese Alien Sues Yet Another Chinese American in EB-5 Case |
| [User3]: | . . .<br>[Posts Order granting Motion to Dismiss against Plaintiffs in another case] |
| [Makhsous]: | I'm not into Mr. Hu's tidbits. The only thing I want to know is weter [sic] the Hesperia nursing home recommended by Mr. Hu is same as the one prosecuted by SEC |
| [Makhsous]: | . . .<br>I'm only concered [sic] about one thing, weter [sic] the Hesperia nursing home recommended by Mr. Hu is same as the one |
| [User 6]: | The answer is no. |
| [Makhsous]: | . . .<br>The nursing home recommended by Mr. Hu belongs to which regional center? |
| [Makhsous]: | You are only an armchair expert in real estate developing, without wisdom and boldness. |
| [User6]: | I wish I'm a professional with actual work experience in this field. Developers' boldness and wisdom are not what I'm pursuing for. My current work doesn't need these qualities. If the boldness and wisdom means violating my own principles, then I don't have them. Wish you a full success, and realize your aspiration as soon as possible. |
| [Makhsous]: | . . .<br>I started to study the investment market in 2008, and I did some research in the inverstment [sic] of motel. Then a pastor, also an intermediary, took me to a nuring [sic] home in which his uncle lived in. I thought the investment in nursing home was more booming than motel, so I embarked on the way of developing nursing home resources. I've realized my dream, just to help our investors applu [sic] for US green card, and I can own my nursing industry. People have conscience and principles as the American project side. Investment counselors can make money against their conscience, a lot of Chinese intermediary agencies [sic] do things like this |
| [User4]: | . . .<br>"I'm not into Mr. Hu's tidbits. The only thing I want to know is weter [sic] the Hesperia nursing home recommended by Mr. Hu is same as the one prosecuted by SEC."<br>@EB-5 [Makhsous], you didn't say that in the very beginning. When [User1] asked what's the problem with Hesperia nursing home project recommended by Mr. Hu, you said this project was prosecuted by SEC. Then I didn't sleep last night, |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

because it determines the future of our six families. I communicated with Mr. Hu this morning, so that I figured out your lies. I don't know why you defamed Mr. Hu, but even if you said that, Mr. Hu also thinks you are better than other domestic Chinese intermediaries, from which we can clearly see the good qualities of one prestigious person. I thought you would tell the truth because you are from the project side, but your objective are also deceiving and defaming.

Ex. A to Declaration of Roy Lou ("Lou Decl."), Dkt. 16-3.[1]

The Complaint alleges that Makhsous has been blacklisted by several prominent blogs, and that as a result, her defamatory comments on those websites are no longer accessible. *Id.* ¶ 31. Plaintiffs attached to their Opposition a comment placed on an unidentified website by a user with the name "go2northamerica." It stated that Makshous had been previously banned from an unidentified website and that she "did not show the supposed subjectivity and reason when posting her views." Ex. E to Hu Decl., Dkt. 21-15. However, because the translator is not identified, this offered evidence is inadmissible, and not considered in this Order. *Sun*, 2001 WL 114443, at *7.

    **B.**     **Additional Evidence**

        1.     <u>Makhsous's Role with New Life Senior Wellness Center, LLC</u>

            a)     Declarations Submitted with Motion to Strike

In connection with the Motion to Strike, Makhsous submitted a declaration describing her role with New Life Senior Wellness Center, LLC, New Life of Crivitz, LP and New Life of Elkhorn, LP. First Declaration of Zoe Makhsous ("First Makhsous Decl."), Dkt. 16-1. Makhsous is a member of New Life Senior Wellness Center, which is a general partner of New Life of Crivitz and New Life of Elkhorn. *Id.* ¶ 3. In connection with the reply to the Motion to Strike, Makhsous submitted a second declaration in which she expanded the description of her role with these entities. Second Declaration of Zoe Makhsous ("Second Makhsous Decl."), Dkt. 23-1. There, Makhsous stated that she "has never acted as an agent or broker for EB-5 Program investments. *Id.* at ¶ 3. I do not recruit investors through my online activism regarding EB-5 matters." *Id.* She stated that New Life of Crivitz has not accepted new partners since June 2012. *Id.* ¶ 7. New Life of Elkhorn has not accepted new partners since September 2014. *Id.* ¶ 6.

---

[1] Both Plaintiffs and Defendants submitted translations of the forum postings at issue. Ex. A to Lou Decl., Dkt. 16-3 (Defendants' translation); Exs. A-1 – A-10 to Declaration of John Deyong Hu ("Hu Decl."), Dkt.21-2 – 21-11 (Plaintiffs' translation). Defendants' translation was attached to the declaration of a translator who stated that he had passed Levels I, II, and III of the China Accreditation Test for Translators and Interpreters in English, and that the translation was done truthfully and accurately to the best of his ability. Lou Decl., Dkt. 16-2 ¶¶ 3-4. Plaintiffs' translations were attached to the declaration of Hu, who stated that the translations were "true and correct" copies. Hu Decl. ¶ 3. Under Fed. R. Evid. 604, "[a]n interpreter must be qualified and must give an oath or affirm to make a true translation." *See Sun v. Governmental Authorities on Taiwan*, No. C 94-2769 SI, 2001 WL 114443, at *7 (N.D. Cal. Jan. 24, 2001) ("Translations of evidence from a foreign language must be authenticated by showing that they are accurate and done by a competent translator."). Because only Defendants' translation meets this standard, it is the only one that is admissible and considered in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

b)    Supplemental Declaration

In connection with the supplemental briefing for the Motion to Strike, Makhsous submitted a third declaration. It provided greater detail about New Life of Crivitz and New Life of Elkhorn. Third Declaration of Zoe Makhsous ("Third Makhsous Decl."), Dkt. 35-1. There, she stated that she began seeking a $2 Million investment for New Life of Crivitz in 2011. *Id.* ¶ 6. She was able to obtain four equity partners, three of whom filed I-829 petitions for permanent residency starting in March 2014. Id. ¶ 7.[2] However, the EB-5 approval process took longer than anticipated. *Id.* ¶ 8. Makhsous stated that New Life of Crivitz intended to withdraw from the operation of the assisted living community in Crivitz as of January 1, 2017. *Id.* ¶ 9. Makhsous also stated that the first two EB-5 partners in New Life of Elkhorn submitted their respective I-526 petitions in May and September 2014. *Id.* ¶ 10. One of those partners received approval 17 months later, but the other had not yet been approved. *Id.*

Makhsous stated that in October 2016, she decided to solicit investment in developing assisted living projects outside of the EB-5 system. *Id.* ¶ 14. She explained: "To be clear, at the time that I made the statements at issue in this case in March 2016, neither I nor any entity sued in this action were acting as an agent or broker for the EB-5 Program investments of other parties, nor were we offering immigration legal services to EB-5 investors." *Id.* ¶ 17. She also stated that, in March 2016, her "sole employment was as a manager of the entities sued in this action, which are assisted living facilities located in Wisconsin exclusively offering assisted living services." *Id.* ¶ 18. She stated that, at that time, neither she nor the entities "were seeking investment of any kind, let alone EB-5 investment. *Id.* ¶ 19.

c)    Makhsous Deposition

In her deposition, Makhsous testified that she is the owner and managing partner of New Life Senior Wellness Center, LLC, which is a general partner in New Life of Elkhorn, LP and New Life of Crivitz, LP. Ex. C to Declaration of Gary M.C. Wong ("Wong Decl."), Dkt. 76-4 at 12-13 (Deposition of Zoe Makhsous ("Makhsous Depo.")). Makhsous's responsibilities with respect to New Life of Elkhorn and New Life of Crivitz include project design and coordinating construction, as well as attempting to secure limited partners to invest in the project. *Id.* at 5, 9.

New Life of Elkhorn and New Life of Crivitz were both established in 2011. *Id.* at 4, 7. Each is a limited partnership. *Id.* at 4, 8. Each sought four limited partners. *Id.* at 21. Each partner was required to invest a minimum of $500,000. *Id.* at 4.

Makhsous testified that at certain times she interacts with potential limited partners in online forums. *Id.* at 9. She stated that, in general, she does so to tell potential investors about the risk of the EB-5 investment process. *Id.* She goes to such websites approximately 20 times per month. *Id.* at 10. Makhsous testified that she primarily posts about New Life of Crivitz, including information as to how the business is doing,

---

[2]  "EB-5 requires prospective Immigrant Investors to file "I-526" petitions seeking approval of their submitted investment and business plans. After approval, Immigrant Investors and their dependents may enter the country as conditional LPRs. EB-5 requires the Immigrant Investors to file a second petition, an "I-829," between 21 and 24 months after the first petition. The INS is to approve the I-829 petition, and grant unconditional LPR status, if it finds that the petitioner made no material misrepresentations in the I-526 petition and complied with the EB-5 requirements." *Chang v. United States*, 327 F.3d 911, 916 (9th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

struggles it is having and how it started. *Id.* at 11.

New Life of Crivitz has three limited partners. *Id.* at 26. Each filed an I-526 petition and an I-829 petition. *Id.* at 13-14. All three of the I-526 petitions and one of the I-829 petitions has been approved. *Id.* at 14. New Life of Elkhorn has had two potential limited partners, both of whom have filed I-526 petitions. *Id.* at 23, 27. One of these I-526 petitions has been approved. *Id.* at 14. Neither of the potential limited partners of New Life of Elkhorn has filed at I-829 petition. *Id.*

Makhsous explained her position with respect to EB-5 visas:

> [J]ust like, you know, Burger King franchise, I feel like I am just like a Burger King franchise. If a business owner wants to open a Burger King in Chicago, and then while they are pursuing opening the store, they say, oh, I need to also arrange my immigration status either on E-2 visa, L-1 visa, or EB-5 visa. It is actually whatever the client wants to do. That part has nothing to do with me. What I do is we create a real business in the United States, pay the real employment in the United States, however the owners want to use that information for their benefit is not my scope.

*Id.* at 6. She testified that she provides visa paperwork "as a courtesy." *Id.* at 15.

        d)     Online Statements

Plaintiffs also filed a certified translation of a thread on an internet forum. There Makhsous made the following representations:

> Blackhorse[3] finally got the first 829 permanent green card for investors after 8 years of cultivating herself in EB-5 industry since 2008 to 2016, which can be called a miracle in EB-5 industry.

> Blackhorse was introduced to EB-5 industry in 2007, participating in the planning and promotion of a regional center project, who decided to start her own career due to the differences on operation strategies with the project party.

> In 2008, after studying the laws related to EB-5 as well as the feasibility of different industries working with EB-5 together, a property was purchased for investment for the development of a nursing home.

> In 2011, Blackhorse recruited two EB-5 investors and submitted 526 petitions in September to develop a rural nursing home project. These two investors obtained 526 approvals in February 2012 without request for evidence. Later on, another two EB-5 investors jointed in this nursing home project, one of whom received approval 28 days after submitting 526 petition in June, and the other of whom decided to submit 526 petition at the end of 2012 but prepared to invest in another project due to the change of the business plan of the nursing home.

---

[3] This is a slightly different translation of the username EB-5 Black Horse, which appears to be Makhsous's username when posting on internet forums about EB-5 visas.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

The nursing home project of Crivitz began the construction in October 2012 and completed the construction in 4 months, which obtained license to start business in February 2013 and accept the first senior person to live there.

The nursing home project of Crivitz is a renovation project of a motel, which was purchased with $1,200,000 in February 2012 and conducted renovation and remodeling with the investment of $975,000. The investment fund was from the $2,000,000 of four investors and the loan of $100,000 was from local Economic Development Department.

All the EB-5 funds were invested as the fix asset of the nursing home project of Crivitz. Since the opening of Crivitz nursing home in February 2013, all the operation funds of the nursing home were from the investment of Blackhorse's own capitals. Blackhorse has been running the nursing home with her start-up capital of $100,000 and obtained 829 permanent green card for the first investor.

Some people say direct investment buys a green card by burning money, which is not realistic at all. It's impossible to have an 829 green card for investors with Blackhorse's start-up capital of $100,000.

Ex. E to Wong Decl., Dkt. 76-6 at 2-3. This thread is dated September 30, 2016. *Id.* at 2.

2.   Hu's Role as a Promoter of EB-5 Projects

Plaintiffs have provided a copy of a contract claimed to be between themselves and the Hesperia project. See Dkt. 76 at 10. Plaintiffs' counsel declares that it is a copy of the EB-5 Agreements among Americana One LLC, Americana Project One LLC and Franchise Regional Center, (jointly, "AO") and Hu & Associates and Hu (jointly, "HU"). Wong Decl., Dkt. 76-1 ¶ 9. However, the contract presented appears to concern an adult day care center in Tustin, California, not Hesperia. Ex. H to Wong Decl., Dkt. 76-9 at 2. The contract includes the following statement:

AO acknowledged that HU are not a registered broker-dealer in the United States under SEC laws. What HU will do under this Agreement is to introduce, truthfully according to his analysis of this Project under Immigration Laws, the Project to his immigration investor clients who want to immigrate to the United States by investment The clients will make their own decision. Further, HU expressed and AO acknowledged that HU shall only represent the interest of his investor clients, that HU shall never represent the interests of AO or any members of AO.

*Id.* It also provides:

HU, from his, professional opinion in immigration law, believed that Americana One Project is currently one of the best projects in the United States. As such, HU is willing to advise his investor clients the immigration legal consequences of investing in this Project. Such advice shall not be construed as soliciting investors under SEC laws and also HU shall not receive any compensation or commission from AO or any third party for introducing this Project to his investor clients.

*Id.* at 2-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

**III.   Analysis**

**A.   Legal Standard**

Section 425.16 of the California Code of Civil Procedure concerns a "strategic lawsuit against public participation" ("SLAPP"). Such an action "is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so." *Simpson Strong-Tie Co., v. Gore*, 49 Cal. 4th 12, 21 (2010). Consequently, Section 425.16 is referred to as the "anti-SLAPP statute." It applies to any "cause of action against a person arising from any act . . . in furtherance of the person's right of . . . free speech . . . in connection with a public issue. Cal. Code Civ. Proc. § 425.16(b)(1). It provides that such a cause of action "shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.* This statute "is designed to nip SLAPP litigation in the bud by striking offending causes of actions which chill the valid exercise of the constitutional rights of freedom of speech and petition." *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997) (internal quotation marks omitted).

A two-step analysis is used to determine whether a motion to strike under Section 425.16 should be granted. *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* To make this showing, the defendant must demonstrate that the alleged conduct "underlying the plaintiff's cause fits one of the categories spelled out in section 425.16." *Id.* Second, if the claim arises from protected conduct, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* If the plaintiff cannot meet this burden, the claim must be stricken. *Id.*

In evaluating whether a defendant has made the threshold showing that the claims arise from conduct in furtherance of free speech, the statute "shall be construed broadly." Cal. Code Civ. Proc. § 425.16(a). Further, whether the statute applies does not turn on how a challenged claim is labeled. If it arises from conduct that was undertaken in furtherance of free speech, it falls within the scope of the statute. *See, e.g.*, *Navellier*, 29 Cal. 4th at 92 (Section 415.16's "definitional focus is not the form of the plaintiff's cause of action, but rather, the defendant's *activity* that gives rise to his or her asserted liability").

The anti-SLAPP statute includes an exemption for commercial speech. It applies when two criteria are established. First, the "statement or conduct consists of representations of facts about the person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statements or conduct was made in the course of delivering the person's goods or services." Cal Code Civ. Proc. § 425.17(c). Second, the "intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer." *Id.*

"The commercial speech exemption, like the public interest exemption, 'is a statutory exception to section 425.16' and 'should be narrowly construed.'" *Simpson Strong-Tie*, 49 Cal. 4th at 22 (quoting *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 316 (2008)). "The burden of proof as to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

the applicability of the commercial speech exemption, therefore, falls on the party seeking the benefit of it -- i.e., the plaintiff." *Id.* at 26. The exemption applies

> when (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2).[⁴]

*Id.* at 30.

    **B.**    **Application**

        1.    <u>Commercial Speech Exemption</u>

The anti-SLAPP statute does not apply

> to any cause of action brought against *a person primarily engaged in the business of selling or leasing goods or services*, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services. [¶] (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . .

*All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc.*, 183 Cal. App. 4th 1186, 1211 (2010) (quoting Cal. Code Civ. Proc. § 425.17(c)).

Plaintiffs argue that the commercial speech exception to the anti-SLAPP statute applies because Defendants' statements "are representations of facts that are *directly* and *specifically* targeted towards Plaintiffs' business operations, good and services." Opposition at 10-11. They note that the thread in which the allegedly defamatory statements were made specifically concerned Hu's Hesperia project. *Id.*

---

⁴ Cal. Code Civ. Proc. § 425.17(c)(2) provides: "The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

at 11.[5] They also state that Plaintiffs and Defendants are business competitors, as "both Plaintiffs and Defendants operate within the same EB-5 market for investment immigration, promote their respective EB-5 investment projects to potential investors, target their promotional efforts toward nationals of the same geographic location, and engage with potential and actual investors on similar sources." *Id.* They state that Makhsous owns two competing EB-5 investment projects. *Id.* at 12 (citing Dkt. 21-15 (e-mail from Makhsous to unidentified third party)).[6]

On January 5, 2017, the parties were allowed to conduct limited discovery with respect to whether Plaintiffs and Defendants are competitors. Dkt. 36. On April 20, 2017, Plaintiffs filed a supplemental brief with additional evidence as to the investment projects administered by Makhsous. Dkt. 76. Based on the deposition of Makhsous, Plaintiffs argue that both parties in this case "provide the same service for EB-5 related entities and for the same purpose." *Id.* at 6. Specifically, they both "help recruit EB-5 investors for EB-5 related entities, for the purpose of attracting them to invest into specific qualifying EB-5 projects. *Id.* at 7.

Defendants disagree with this characterization of their work. They argue that "Plaintiffs provide *two services*: they promote other entities' EB-5 project programs, and they provide related *immigration legal services* to individuals investing in those programs." Dkt. 35 at 4. "Defendants are, on the other hand, an assisted living management company and two assisted living facilities located in Wisconsin, along with their manager and owner." *Id.* Defendants present the following analogy in support of their position: "an advertising agency who works to *promote* Coca-Cola's products making the claim that the agency *is itself* a competitor of Pepsi." *Id.* Defendants also argue that, as of March 2016, they were not actively seeking any EB-5 investors. *Id.* at 6-7.

"[T]he legislative history of the commercial speech exemption to the anti-SLAPP statute confirms the Legislature's intent to except from anti-SLAPP coverage disputes that are *purely* commercial." *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1142 (C.D. Cal. 2009) (quoting *Taheri Law Group v. Evans*, 160 Cal.App.4th 482, 491 (2008)). Therefore, the commercial speech exemption "should be narrowly construed." *Simpson Strong-Tie*, 49 Cal. 4th at 22. The California Supreme Court has identified four conditions that must be satisfied to warrant the application of the exemption: (i) the cause of action must be "against a person primarily engaged in the business of selling or leasing goods or services"; (ii) the cause of action must arise from a statement "consisting of representations of fact about [the defendant's] or a business competitor's business operations, goods, or services"; (iii) the statement must have been made for the purposes of promoting transactions in the defendant's goods or services or in the course of delivering the defendant's goods or services; and (iv) the intended audience for the statement must have been a customer or potential customer, or someone likely to repeat the statement to a

---

[5] Although the Complaint also includes allegedly defamatory statements made about Hu in 2012 that did not concern the Hesperia project itself, Plaintiffs appear to concede that claims based on such statements are time barred. In their Opposition, Plaintiffs mention the 2012 Statements only as evidence that Makhsous has a "history of malicious misrepresentations of competing EB-5 projects and their promoters." *See* Opposition at 9-10.

[6] It is not clear that this e-mail, from "zeoma5@hotmail.com" to "donggangchaoren@yeah.net," is admissible. It was attached as Exhibit E to the Hu Declaration, which stated that it is "true and correct." Dkt. 21-15. However, Hu was not included on the e-mail, and his declaration contains no information as to how he acquired it. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (an attorney's statement that an exhibit is "a 'true and correct copy' does not provide authentication" if the affiant "lacks personal knowledge of its contents").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

customer or potential customer. *Id.* at 30.

Defendant New Life Senior Wellness Center is a management company. Defendants New Life of Elkhorn and New Life of Crivitz own and operate nursing homes in Wisconsin. Defendant Makhsous is the owner and managing partner of New Life Senior Wellness Center. Complaint ¶¶ 6-8; Ex. C to Wong Decl., Dkt. 76-4 at 5 (Makhsous Depo.). Makhsous was not an "agent or broker from the EB-5 Program investments of other parties," and did not offer immigration legal services. Second Makhsous Decl., Dkt. 35-1 ¶ 17. She has represented that, in March 2016, when she made the statements at issue in this case, her sole employment was as a "manager" of the New Life entities, none of which were seeking investment at that time. *Id.* ¶¶ 18-19.

Notwithstanding these assertions, the evidence that has been presented supports the view that Defendants are "primarily engaged" in the business of property development by means of the sale of financial instruments to EB-5 investors. New Life of Crivitz and New Life of Elkhorn have had several investors or prospective investors, all of whom have sought to secure visas under the EB-5 program. Dkt. 76-4 at 13-14. Makhsous testified that she provides paperwork about the EB-5 program and instructions on how to complete it, but only as a courtesy to prospective investors. *Id.* at 15. Further, contrary to the representations in Defendants' memoranda and the declarations of Makhsous, there is evidence that Makhsous remained involved in the "EB-5 industry" at least as of September 30, 2016. Dkt. 76-6 at 2-3. That is when she posted on an online forum that she "finally got the first 829 permanent green card for investors" after "cultivating herself in the EB-5 industry from 2008 to 2016. *Id.* at 2. This statement was made approximately six months after the statements at issue in this action.

Hu is an attorney specializing in EB-5 petitions. He also entered into an agreement to promote the Hesperia project. Complaint ¶¶ 4, 24; *see also* Dkt. 76-9 at 2.[7] Although Hu does not receive any direct payment with respect to his promotion of the Hesperia project, it is reasonable to infer from the evidence that it is important for him to have a relationship with United States investments to which he can refer his clients. Accordingly, he has a commercial interest in both the success of the Hesperia project and the approval of investors' applications for EB-5 visas.

In light of these facts, any distinction between Plaintiffs as service providers for those seeking to secure visas under the HB-5 program and Defendants as equity owners of a business funded through HB-5 investments is not clear. Notably, there is no requirement in § 425.17 that plaintiffs and defendants be engaged in an identical enterprise. Rather, by its own terms, it requires a business competitor. "The definition of 'competitor' in Webster's Dictionary . . . is a 'rival' or 'one selling or buying goods or services in the same market as another.'" *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1104 (C.D. Cal. 2004).

Here, both parties are involved in what Makhsous has referred to as the "EB-5 industry." Dkt. 76-6 at 2. Moreover, both Plaintiffs and Defendants have a business interest in directing potential EB-5 investors to different assisted living facilities. As Defendants point out, the nature of the interest of the parties is not

---

[7]  Although this contract refers to an agreement relating to a project in Tustin, it appears to have the same or similar terms to the agreement relating to the project in Hesperia, based on the representations made in the Complaint. Further, like the Hesperia project, the project referenced in this contract is administered by Americana One, LLC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|----------|--------------------------|------|--------------|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

identical. However, they are competing for the same pool of potential investors.[8] A potential EB-5 investor seeking to invest in an assisted living facility in the United States who is utilizing Plaintiffs' services will not invest in Defendants' properties; conversely, a potential EB-5 investor seeking to invest in Defendants' properties will not use Plaintiffs to process their visa applications. This distinction is a result of the close relationship between EB-5 attorneys and the entities seeking EB-5 investors. *See, e.g.*, Dkt. 76-4 (Makhsous Depo.) at 6-7 (Q: "[Y]ou mentioned that attorneys go to you to refer some of these limited partners to you. What are the names of some of these attorneys?" A: "I have worked [sic] three attorneys' office, [sic] one is Lincoln Stone office from Los Angeles."); Dkt. 76-9 at 2 (agreement between Americana One LLC and Hu).

The inquiry does not end with the determination that Plaintiffs and Defendants were business competitors. In order to fall within the anti-SLAPP exception under § 425.17(c), Plaintiffs must show that "the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services." *Simpson Strong-Tie*, 49 Cal. 4th at 30.

Plaintiffs argue that Defendants' defamatory statements are representations of fact about Plaintiffs' business operations, goods, and services, and that Defendants made them for the purpose of promoting or securing sales of their own goods or services. Dkt. 33. at 9. In support of the latter position, Plaintiffs contend that

> Defendants instilled fear and doubts into investors['] mind[s] by intentionally providing false statement of facts, then utilized that fear to generate inquiries, and subsequently capitalized on those inquiries by promoting competing EB-5 projects that are owned and/or managed by Defendants and redirecting competitor's investors to the competing projects.

*Id.* at 10.

Some of the evidence submitted supports this position. As noted, on September 30, 2016. Plaintiff made a post on an online forum. It stated that she had succeeded in obtaining visas for her EB-5 investors. Dkt. 76-6 at 2-3. That posting also stated that she had been in the EB-5 industry for the prior eight years. *Id.* at 2. In a later post in the same forum thread made on October 1, 2016, Makhsous represented that

> our mini nursing home can in fact be duplicated, and we are also prepared to run a chain

---

[8]  For this reason, Defendants' analogy to an advertising agency is not persuasive. Advertising agencies are in the business of securing advertising contracts and compete with other advertising agencies to do so. To the extent that they promote products for their clients, it is the business of the clients, and not of the purchasers of the products, that they are seeking to obtain. *See Indus. Waste & Debris Box Serv., Inc. v. Murphy*, 4 Cal. App. 5th 1135, 1153 (Ct. App. 2016) (a waste management consulting company was not subject to the anti-SLAPP exception regarding a report it had prepared for the plaintiff's business competitor when there was no evidence that the report "had any purpose other than providing the review and analysis they had been hired and were being paid to provide."); Rutter Group, Cal. Prac. Guide Civ. Pro. Before Trial Ch. 7(II)-E ("Because the statute requires that the speaker be 'a person primarily engaged in the business of selling or leasing goods or services' (CCP § 425.17(c)(1)), the "commercial speech" exception does not apply to representations by a trade group acting on behalf of members engaged in the business of selling goods but not itself so engaged."). Here, in contrast, all parties involved are in the business of persuading EB-5 investors to invest in specific assisted living facilities.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

operation in America. Our project does not have administrative fee, investors can inquire with our investor who got his 829 approved, and pay him to supervise and check on the project. Our project does not promote through any agency.

We have the record of getting 829 approved with the start-up capital of $100,000. The visa bulletin is good for us, which means the longer the bulletin is, the more mature our project operation becomes. It's the same as ginger. The older the ginger is, the spicy it is.

*Id.* at 30.

This evidence is not dispositive. Under § 425.17, it is not sufficient to show that the statement at issue could have had the effect of promoting or securing additional business. Rather, it is required that the plaintiff show that the statement was made "*for the purpose of*" promoting the defendant's goods or services, or in the course of delivering those goods or services. *See Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1154-55 (C.D. Cal. 2005) (for the exemption to the anti-SLAPP statute to apply, "the statement must be about the speaker's or a business competitor's business and *must be made to obtain sales or leases* of goods or services, or must have been made in the course of delivering the person's goods or services") (emphasis added). In the context of false and misleading advertising, for example, this "typically means that the speech consists of representations of fact about the business operations, products, or services of the speaker . . . , made for the purpose of promoting sales of, or other commercial transactions in, the speaker's products or services." *JAMS, Inc. v. Superior Court*, 1 Cal. App. 5th 984, 994 (2016).

*Sunset Millennium Associates v. LHO Grafton Hotel*, 146 Cal. App. 4th 300 (2006) is also instructive. There, plaintiff and defendant operated competing hotels in Los Angeles. *Id.* at 302. They entered into a mutual agreement pursuant to which neither would oppose any expansion of the hotel operated by the other. *Id.* at 303. However, when Plaintiff sought an environmental approval for a proposed expansion, defendant objected on several grounds, including increased congestion and lack of accessibility for the area. *Id.* at 306-07. Plaintiff then brought an action against the defendant asserting that the defendant had violated the mutual agreement not to oppose expansion. The defendant brought an anti-SLAPP motion. Plaintiff opposed the motion based on the commercial speech exception of § 425.17. The Court of Appeal concluded that the parties were business competitors. *Id.* at 313. However, it also determined that the statements made by the defendant "were in an effort to forestall environmental approval of plaintiff's 2004 project; not for the purpose of promoting defendant's hotel 'goods and services.'" *Id.* Accordingly, it concluded that § 425.17 did not apply. *Id.*; *see also* Rutter Group, Cal. Prac. Guide Civ. Pro. Before Trial Ch. 7(II)-E (quoting *Simpson Strong-Tie*, 49 Cal. 4th at 31-32 ("Manufacturer could not invoke the 'commercial speech' exception because the advertisement was not a representation of fact about *Attorney's* "business operations, goods or services.").

The evidence here is similar. Makhsous did not mention either New Life of Crivitz or New Life of Elkhorn in the forum thread that is the basis for this action. Nor did she identify herself as a representative of either or both of these entities, or represent that she was seeking EB-5 investors. Her comments can be interpreted as an effort to discourage investors from choosing the Hesperia project. However, they cannot reasonably be construed as the promotion of Defendants' developments. As a result, § 425.17 does not warrant the denial of Defendants' Motion to Strike.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

2.      Anti-SLAPP Statute

(1)      Were the Forum Postings in Furtherance of Defendants' Free Speech Rights in Connection with a Public Issue?

Defendants argue that the postings by Makhsous were protected by the First Amendment because they were made as to a topic of wide public interest: fraud in the EB-5 program. Motion at 18. "The exact inquiry at the first step [of the anti-SLAPP inquiry] is somewhat amorphous, but it seems to contain two distinct components." *Hilton v. Hallmark Cards*, 599 F.3d 894, 903. "First, the activity the plaintiff is challenging must have been conducted 'in furtherance' of the exercise of free speech rights." *Id.* This requirement has been "interpreted . . . rather loosely." *Id.* at 904. The Ninth Circuit has suggested that it may be met by a statement that "evinces '[a]n intent to convey a particularized message'" where "'in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it.'" *Id.* (quoting *Spence v. Washington*, 418 U.S. 405, 410-11 (1974)). Second, the plaintiff must show that the speech at issue "was 'in connection with a public issue or an issue of public interest.'" *Id.* at 904-05.

In applying this test, California courts have suggested several considerations in determining whether speech is in connection with a public issue. They include whether such speech "concern[s] a person or entity in the public eye . . . could directly affect a large number of people beyond the direct participants," or is on a "topic of widespread, public interest." *Id.* at 906. The following guidance has also been presented:

> First, "public interest" does not equate with mere curiosity. Second, a matter of public interest should be something of concern to a substantial number of people. Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. Third, there should be some degree of closeness between the challenged statements and the asserted public interest; the assertion of a broad and amorphous public interest is not sufficient. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy. Finally, . . . [a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Id.* at 906-07 (quoting *Weinberg v. Feisel*, 110 Cal. App. 4th 1122 (2003)).

Defendants argue that the challenged speech was related to a public issue. Thus,

> Makhsous's writings (1) exposing the common and unsavory business practices of those soliciting such investments, and (2) searching for, translating, and relaying information regarding U.S. Securities and Exchange Commission complaints against fraudulent EB-5 Program projects in the United States to concerned parties, some of whom are not native English speakers, serves the public function of illustrating the breadth and depth of the corruption in this industry and the potential risks to investors.

Motion at 19.

Defendants' position about the significance of exposing to investors potential risks they face, is consistent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

with *Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013). There, the Ninth Circuit concluded that statements providing "consumer protection information" further the constitutional right of free speech in connection with an issue of public interest. *Id.* at 262. *Makaeff* held that anonymous postings in online forums warning other consumers that Trump University was a scam "constituted consumer protection information because they were intended as 'a warning not to use plaintiffs' services' and came in the context of information that was 'provided to aid consumers.'" *Id.* at 263.

In support of this position, *Makaeff* cited *Wilbanks v. Wolk*, 121 Cal. App. 4th 883 (2004). In that action, plaintiffs were brokers of viatical settlements.[9] They advanced defamation and unfair business practice claims against a former broker who maintained a website with consumer information about other brokers. *Id.* at 889. The defendant posted the following information about the plaintiffs on her website:

> Be very careful when dealing with this broker. Wilbanks and Assoc. is under investigation by the CA dept. of insurance. The complaint originated with a California viator who won a judgment against Wilbanks. How many others have been injured but didn't have the strength to do anything about it?

*Id.* at 890.

The California Court of Appeal held that the "comments on plaintiffs' business practices" did not meet the criteria for public interest, as "plaintiffs are not in the public eye, their business practices do not affect a large number of people and their business practices are not, in and of themselves, a topic of widespread public interest." *Id.* at 898. "Consumer information, however, at least when it affects a large number of persons, also generally is viewed as information concerning a matter of public interest." *Id.* Therefore, the "statements made by [the defendant] were not simply a report of one broker's business practices, of interest only to that broker and to those who had been affected by those practices." *Id.* at 90. Rather, they "were a warning not to use plaintiffs' services. In the context of information ostensibly provided to aid consumers choosing among brokers, the statements, therefore, were directly connected to an issue of public concern." *Id.*

Similarly, the comments at issue here were made in a forum posting asking for assistance with selecting an investment under the EB-5 program. Thus, in context, they were consumer information regarding a matter of public interest. Therefore, the challenged statements reflect protected expressions by Defendants in connection with an issue of public interest.

> (2)    Have Plaintiffs Demonstrated a Probability of Prevailing on their Claims?

As noted, Plaintiffs have brought several causes of action: (i) libel per se; (ii) libel; (iii) trade libel; (iv) false light invasion of privacy; (v) negligent interference with prospective economic relations; (vi) intentional interference with prospective economic relations; and (vii) respondeat superior. Complaint. The claims for interference with prospective economic relations are subject to the "same first amendment requirements that govern actions for defamation." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir.

---

[9]  "[V]iaticals are arrangements that allow dying persons with life insurance policies to sell their policies to investors for a percentage of the death benefits." *Wilbanks*, 121 Cal. App. 4th at 889.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

1990). Moreover, all of these claims are founded on the alleged defamation.

Defendants argue that Plaintiffs are unlikely to prevail on their claims because Plaintiffs are limited-purpose public figures. Consequently, Defendants have liability only if the challenged statements were made with actual malice or a reckless disregard for the truth. Motion at 20-21. Plaintiffs argue that they are not limited-purpose public figures, that Defendants' allegedly defamatory statements are not related to Plaintiffs' participation in the controversy, and that even if Plaintiffs were limited-purpose public figures, Defendants acted with actual malice and reckless disregard for the truth. Opposition at 18-21.

(a)     Limited-Purpose Public Figure

In determining whether plaintiffs have demonstrated a probability of prevailing on their claims, "courts must take into account whether the plaintiff is a public figure who must prove actual malice by clear and convincing evidence." *Annette F. v. Sharon S*., 119 Cal. App. 4th 1146, 1162 (2004). The Supreme Court has recognized two categories of public figures. *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 351 (1974).

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

*Id*. "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Id*. at 352. "It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id*.

"To characterize a plaintiff as a limited purpose public figure, the courts must first find that there was a public controversy." *Annette F*., 119 Cal. App. 4th at 1163. A public controversy is presented where "the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants." *Id*. at 1164. Notably, public controversies "are not defined as matters of interest to the public: rather, the controversy 'must be a real dispute, the outcome of which affects the general public or some segment of it in an appreciable way . . . .   [A] public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants.'" *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc*., 66 F. Supp. 2d 1117, 1122 (C.D. Cal. 1999). A limited-purpose public figure "must ordinarily 'have undertaken some *voluntary* act through which he seeks to influence the resolution of the public issues involved.'" *Annette F*., 119 Cal. App. 4th at 1163 (quoting *Reader's Digest Ass'n. v. Superior Court*, 37 Cal. 3d 244, 208 (1984) (emphasis in original)); *see also Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1080 (N.D. Cal. 2012) ("The limited purpose public figure is an individual who voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues.").

Defendants argue that Hu and Hu & Associates are limited-purpose public figures with respect to a defamation claim over their business practices and the general issue of fraud within the EB-5 program. Motion at 21. They argue that "the issue of fraud within the EB-5 Program is one that is growing, serious,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
| --- | --- | --- | --- |
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

and under scrutiny by the [United States Customs and Immigration Service], the SEC, and private citizens like Defendant Makhsous." *Id.* From this they contend that "fraud within the EB-5 Program and related SEC enforcement is clearly a matter of public controversy, with ramifications felt by third parties with regard to United States immigration policy and its efficacy, the expenditure of tax dollars on enforcement, and risk assessment with regard to investment transactions between private parties." *Id.*

Defendants also argue that Plaintiffs voluntarily injected themselves into the controversy through the following actions:

> Plaintiff Hu has availed himself of the media on these topics, including being "interviewed and featured on prominent international TV network, Phoenix TV, on multiple occasions," and has "authored many professional articles on various immigration issues, informing readers of traps and pitfalls of applying for EB-5, and on how to best protect investors' interests." (Compl. ¶ 4.) Plaintiffs additionally concede that Plaintiffs are "well known within the EB-5 community." (Compl. ¶ 20.). Were this not enough, Plaintiffs state that Plaintiffs' website, www.hoolaw.com, is a continuing venue for their public commentary on EB-5 Program matters, with content contained therein republished by interested parties elsewhere on the internet, presumably with Plaintiffs' consent. (Compl. ¶¶ 18, 19.)

Motion at 22.

Plaintiffs do not challenge the argument that the speech at issue is related to an issue of public controversy. Instead, they contend that the public controversy is limited to "the problem relating to the Americana Hesperia Project that Plaintiffs promote." Opposition at 19. Plaintiffs then argue that Defendants' allegedly defamatory statements fit into three categories:

> (1) false statements of facts accusing the Americana Hesperia Project of being sued by the SEC; (2) the intentional utilization of outdated articles relating to old statuses of an ongoing case against Plaintiffs, in order to attribute fault and other negative qualities to Plaintiffs; and (3), the intentional utilization of a blog post relating to another individual with the same first and last name as Plaintiff John Hu, in order to attribute the negative qualities of the unrelated individual to Plaintiffs.

*Id.* at 20. Plaintiffs claim that "[n]one of these statements relate to Plaintiffs' promotional efforts for the American Hesperia Project" because they are all related to projects in which Plaintiffs did not play any role. *Id.*

Even accepting Plaintiffs' narrower framing of the public controversy at issue in this case, Defendants' allegedly defamatory statements clearly pertain to the Hesperia project. Indeed, as Plaintiffs argue "[i]n order to understand how Defendants' statements are [a] representation of facts that are *directly* and *specifically* targeted towards Plaintiffs' business operations, goods and services, one must first understand the subject matter and context of the discussion thread that Defendants have posted their defamatory statements on." *Id.* at 10-11. Plaintiffs also state that "the Hesperia Project that 'Attorney Hu' promotes . . . is the topic of discussion" in the thread in which the allegedly defamatory statements appear. *Id.* at 11. Defendants' statements cannot be "*directly* and *specifically* targeted towards" Plaintiff's business if not related to it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

Plaintiffs also argue that they never participated in the controversy. They observe that, although Defendants have published articles and participated in television interviews on the EB-5 program, Defendants have not provided any evidence that the television appearances or articles pertained to the Hesperia project. *Id.* at 21. Defendants respond that Plaintiffs' status as the "exclusive promoters" of the Hesperia project is a sufficient basis to conclude that they have voluntarily injected themselves into any controversy over the matter. Reply at 8.

Plaintiffs provide no citations to support their argument that they have not participated in the controversy. However, merely participating in a business venture that is subject to allegedly defamatory criticism does not meet the requirement for voluntarily participating in a controversy. *Carver v. Bonds,* 135 Cal. App. 4th 328 (2005), is instructive. It held that the plaintiff could not be "found to be a public figure for purposes of statements accusing him of false advertising." *Id.* at 354. *Carver* concluded that a plaintiff did not become a public figure as a result of criticisms "by 'business practice critic[s]' who are 'denigrat[ing]' plaintiff for the content of his advertising." *Id.* (quoting *Vegod Corp. v. American Broadcasting Cos.*, 25 Cal.3d 763, 770 (1979)). Similarly, *Vegod*, 25 Cal.3d at 769-70, held that a company advertising a close-out sale for a failing department store did not become party to the controversy surrounding the store's destruction.

*Makaeff* recognized that "large scale, aggressive advertising can inject a person or entity into a public controversy that arises from the subject of that advertising." 715 F.3d at 267. Thus, Trump University "conducted an aggressive advertising campaign in which it made controversial claims about its products and services." *Id.* at 268. "This campaign included online, social media, local and national newspaper, and radio advertisements for free introductory seminars." *Id.* at 268-69. The court distinguished *Vegod* by noting that in that case, "the plaintiffs' close-out advertising did not address the controversy over the planned destruction of the landmark store." *Id.* at 269. Further, the court noted that the analysis of who constitutes a public figure is a constitutional issue, meaning that state law is not binding upon the federal court. *Id.* at 270.

Defendants rely on *Makaeff* to support their argument that Plaintiffs voluntarily injected themselves into the controversy. They note that the Complaint states that "Plaintiffs have authored many professional articles on various immigration issues, informing readers of traps and pitfalls of applying for EB-5, and on how best to protect investors' interests" and that "[t]hese articles are also regularly republished on prominent immigration-related blogging sites." Complaint ¶¶ 18-19. The Complaint further alleges that "[d]ue to these exposures, Plaintiffs are well known within the EB-5 community" and that "[t]he names of the investment projects that Plaintiffs introduce to investors also garnered much attention in the community because Plaintiffs have established a very good track record of only introducing qualifying projects to investors." *Id.* ¶ 20. The Complaint also alleges that

> Plaintiffs are well received by potential investors, and are well known by investment projects for his [sic] ability to attract and secure investors. This in turn allows him to often times [sic] be the exclusive promoter for investment projects. He is in fact the exclusive promoter for the investment project, Americana Hesperia Retirement Funding, LLC ("Hesperia").

*Id.* at ¶ 24.

Once again, Plaintiffs are estopped from taking inconsistent positions. In the Complaint they allege that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|---|---|---|---|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

they are in the position to promote the Hesperia project *because of* their prominence on the issue of EB-5 projects. This precludes their argument that they are not limited-purpose public figures, either for the purpose of whether the Hesperia project is fraudulent or for the debate surrounding the EB-5 program more generally. There is a "direct relationship" between the topic on which Plaintiffs have presented themselves as experts and the allegedly defamatory comments, "which reflects [Plaintiffs'] pre-existing involvement in this particular matter of public concern and controversy." *Makaeff*, 715 F.3d at 269.

Because Plaintiffs are limited-purpose public figures in this context, and the allegedly defamatory statements are measured on this basis.

        (b)     Likelihood of Prevailing on Defamation Claim

The actionable defamatory statements attributed to Makhsous in the Complaint are:

- The statement that the Hesperia project was being sued by the SEC (Complaint ¶ 32);
- A link to an SEC complaint in an unrelated project called "Suncor Hesperia" (*id.* ¶ 34);
- A link to a blog post titled "If the EB-5 Developer Can't Count the Zeroes, Look for Another Broker" accompanied by the statement "another joke . . . take a look at the person who is promoting this project" (*id.* ¶ 35); and
- The copy-pasted text of the blog post with the name "John Hu Migration Consulting" highlighted (*id.* ¶ 36).

To prevail on a claim of defamation, a limited-purpose public figure must demonstrate that the allegedly defamatory statement is made with "'actual malice' -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Gertz*, 418 U.S. at 334. "The reckless disregard test is not a negligence test measured by whether a reasonably prudent person would have published, or would have investigated before publishing, the defamatory statement." *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007). "Instead, to support a finding of actual malice, the failure to investigate must fairly be characterized as demonstrating the speaker purposefully avoided the truth or deliberately decided not to acquire knowledge of facts that might confirm the probable falsity of charges." *Id.*

"The existence of actual malice turns on the defendant's subjective belief as to the truthfulness of the allegedly false statement." *Annette F.*, 119 Cal. App. 4th at 1167. Actual malice may be proved by "direct or circumstantial evidence," including "[f]actors such as failure to investigate, anger and hostility, and reliance on sources known to be unreliable or biased." *Id.*

Here, neither direct nor circumstantial evidence has been presented that is sufficient to support an inference of actual malice. There were two nursing home projects with the word "Hesperia" in their names. Both are located in Hesperia, California, and both were accepting EB-5 investors. Hu brokers EB-5 projects through Hu & Associates; the article to which Makhsous provided a link referred to a firm called John Hu Migration Consulting. It also appears to have been involved in brokering EB-5 transactions. Makhsous's explanation that she innocently confused these parties is "not so implausible as to support an inference of actual malice." *Annette F.*, 119 Cal. App. 4th at 1169. The only contrary evidence cited by Plaintiffs, *i.e.,* evidence that Makhsous knew her statements about Plaintiffs were false or that she acted with reckless disregard as to whether or not they were false, is that she posted a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|----------|--------------------------|------|--------------|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

follow-up to her original statement. There, she expressed doubt that she and the original poster were discussing the same investment. Opposition at 22. This follow-up supports the inference that Makhsous was mistaken, or at worst negligent in her initial posting. This is not sufficient to support a finding of actual malice.

Because Plaintiffs have not presented persuasive evidence that Defendants acted with actual malice in making the statements at issue in this action, they have not shown that they are likely to prevail on their defamation claims. Accordingly, they have not met their burden of proof under § 425.16.

        3.    <u>Leave to Amend</u>

California courts have concluded that there is no right to file an amended complaint once an anti-SLAPP motion has been granted. *See, e.g.*, *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1074 (2001) ("granting leave to amend the complaint after the court finds the defendant had established its prima facie case would be jamming a procedural square peg into a statutory round hole"). However, in *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081 (9th Cir. 2004), the Ninth Circuit held that "granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *Id.* at 1091. Accordingly, whether to allow leave to amend after an anti-SLAPP motion is granted is determined under the liberal standards of Fed. R. Civ. P. 15.

The following standard applies under Rule 15:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, there is no showing that any of these factors applies. Consequently, granting leave to amend is appropriate.

Section 425.6 (c)(1) provides that attorney's fees may be recovered by a party that prevails on an anti-SLAPP motion. However, when the motion is granted in a federal proceeding, district courts have concluded that such fees may not be recovered where leave to amend has been granted. *See Masimo Corp. v. Mindray DS USA, Inc.*, No. SACV 12-02206-CJC(JPRx), 2014 WL 12597114, at *2 (C.D. Cal. Jan. 2, 2014) ("[D]istrict courts have denied defendants recovery of their attorney's fees and costs where the anti-SLAPP motion is granted, but the plaintiff is also given an opportunity to amend the complaint."); *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155–56 (C.D. Cal. 2010) (denying attorney's fees to the moving party under the anti-SLAPP statute where leave to amend was granted); *Stutzman v. Armstrong*, No. 2:13-CV-00116-MCE, 2013 WL 4853333, at *21 (E.D. Cal. Sept. 10, 2013) ("[W]hen a plaintiff is granted leave to amend the complaint, a defendant whose anti-SLAPP motion is granted is not a 'prevailing party' for purposes of the anti-SLAPP statutory framework.").

The analysis in these decisions is persuasive. The purpose of the anti-SLAPP statute is to discourage the litigation of claims that lack merit and have a chilling effect on the exercise of Constitutional rights. These criteria are not established where a court concludes that leave to amend would not be futile because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-03078 JAK (MRWx) | Date | July 7, 2017 |
|----------|---------------------------|------|--------------|
| Title | Hu and Associates, LLC, et al. v. New Life Senior Wellness Center, LLC, et al. | | |

viable claims could be asserted. Further, an award of fees under these circumstances would be inconsistent with the principles of Fed. R. Civ. P. 15, which controls in this federal proceeding. Thus, it would be inappropriate to impose what would be, in effect, a financial charge on a party as a condition to exercising what a court has determined to be its right to amend.

**IV.    Conclusion**

For the foregoing reasons, Defendants' Motion to Strike is **GRANTED**. This determination is without prejudice to the filing of an amended complaint that cures the issues identified in this Order. Any such complaint shall be filed within on or before July 17, 2017.

**IT IS SO ORDERED.**

_____  :  _____

Initials of Preparer    ak